**Romben Aquino**
**FERRO & CUCCIA**
**100 LAFAYETTE STREET**
**NEW YORK, NY 10013**
**212-966-7775**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
**Ameen Nagi Saleh,**                             Civil Action
       Petitioner,                       Docket 08-cv-0076 (SAS)

v.

**Andrea Quarantillo, et al.,**
       Respondents.
-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**
**PETITIONER SALEH'S MOTION FOR SUMMARY JUDGMENT**

                        Romben Aquino
                        FERRO & CUCCIA
                        Attorneys for Plaintiff

                        100 Lafayette Street
                        Suite 201
                        New York, NY 10013

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................................................1

**STATEMENT OF FACTS**........................................................................................................1

**STANDARD OF REVIEW** ......................................................................................................2

**ARGUMENT**............................................................................................................................3

**CONCLUSION**.........................................................................................................................6

# TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................................. 2
Biba v. U.S. Dept. of Homeland Security, 2006 WL 1814318 (M.D.Fla. 2006) ........................... 5
Fedorenko v. United States, 449 U.S. 490 (1981) ......................................................................... 4
INS v. Pangilinan, 486 U.S. 875 (1988) ........................................................................................ 3
Nagahi v. INS, 219 F.3d 1166 (10th Cir. 2000) ............................................................................. 3
Ragoonanan v. USCIS, 2007 WL 4465208 (D.Minn. 2007) ......................................................... 5
U.S. v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004) ......................................................................... 3
Zaranska v. U.S. Dept. of Homeland Security, 400 F.Supp.2d 500 (EDNY 2005) ....................... 2

**STATUTES**

8 U.S.C. § 1421(c) ..................................................................................................................... 1, 3
8 U.S.C. § 1427(a)(3) ..................................................................................................................... 4
New York Tax Law §§ 18140 and 18170 ...................................................................................... 4
New York Penal Code § 240.20 ................................................................................................ 1, 5

**REGULATIONS**

8 C.F.R. § 316.10(b)(1) .................................................................................................................. 5
8 C.F.R. § 316.10(b)(2) .................................................................................................................. 5
8 C.F.R. § 316.10(b)(3)(iii) ............................................................................................................ 4
Fed. R. Civ. P. 56(c) ...................................................................................................................... 2

## PRELIMINARY STATEMENT

Ameen Nagi Saleh ("Saleh") respectfully submits this memorandum of law in support of his motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Pursuant to 8 U.S.C. § 1421(c), Saleh requests that the Court conduct a de novo review of the denial of his naturalization application by U.S. Citizenship and Immigration Services ("USCIS").

## STATEMENT OF FACTS

Saleh has been a lawful permanent resident of the United States since December 1, 1990. See N-400 Application for Naturalization; see also Alien Registration Card.

On January 29, 1994, Saleh was arrested, but the charges were dismissed. See Disposition of Arrest. On three other occasions (November 15, 2005; January 13, 2006; and April 14, 2006), Saleh was arrested and convicted of disorderly conduct under New York Penal Code § 240.20. See Dispositions of Arrest.

Between February 2002 and February 2007, Saleh traveled twice to Yemen, for periods of 149 and 120 days. See N-400 Application for Naturalization, at 4.

On or about February 16, 2007, Saleh submitted a N-400 Application for Naturalization to USCIS. See N-400 Application for Naturalization, at 1-10.

On May 16, 2007, a District Adjudications Officer employed by USCIS examined Saleh regarding his naturalization application. See USCIS Decision dated May 31, 2007. On May 31, 2007, USCIS denied Saleh's N-400 Application. See USCIS Decision dated May 31, 2007.

On or about June 20, 2007, Saleh submitted an administrative appeal of his N-400 denial, technically called a N-336 Request for Hearing on Decision in Naturalization Proceedings.  See USCIS Decision dated December 20, 2007.  In a December 20, 2007 decision, USCIS denied Saleh's administrative appeal.  Id.  The decision stated, in relevant part:

> A hearing, which began with the prescribed oath, was scheduled for 12/5/07, to review the decision to deny your Application for Naturalization.  You were denied for a Lack of Good Moral Character because you were arrested and found guilty on three separate occasions within the statutory period upon filing for naturalization.  You were arrested on November 15, 2005, January 13, 2006, and again on April 14, 2006 for evading the tax on selling cigarettes.  You pleaded guilty to disorderly conduct.  When sentenced on the November 2005 arrest you were given one year conditional discharge yet you ignored that condition and was arrested twice within the year for the same offense.  You have shown no reformation of character and in fact have shown a callous disregard for the laws of the United States.  You have been convicted of three offenses within the statutory period and are unable to demonstrate Good Moral Character at this time.  Accordingly, after careful review of the record and all relevant statutes, the decision to deny the application for naturalization must remain unchanged.

Id., at 1.

On January 4, 2008, Saleh filed a Petition for Review of Naturalization Denial ("Petition") with the Court.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor.  See Zaranska v. U.S. Dept. of Homeland Security, 400 F.Supp.2d 500, 512 (EDNY 2005) citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

# ARGUMENT

**CONTRARY TO USCIS'S DECISIONS, SALEH IS ELIGIBLE FOR NATURALIZATION IN ALL RESPECTS.**

Congress provides for *de novo* judicial review of USCIS's denials of naturalization applications under 8 U.S.C. § 1421(c):

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

"[T]his grant of authority is unusual in its scope -- rarely does a district court review an agency decision de novo and make its own findings of fact." Nagahi v. INS, 219 F.3d 1166, 1169 (10th Cir. 2000). "[E]ven if the INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions." U.S. v. Hovsepian, 359 F.3d 1144, 1162 (9th Cir. 2004) (emphasis omitted).

Saleh has exhausted his administrative remedies following the May 31, 2007 denial of his naturalization application. He submitted a N-336 administrative appeal on June 20, 2007, and USCIS denied his appeal on December 20, 2007. See USCIS Decision dated December 20, 2007.

The applicant bears the burden "to show eligibility for citizenship in every respect," INS v. Pangilinan, 486 U.S. 875, 884 (1988), and must strictly comply with the

requirements for citizenship articulated by Congress. See Fedorenko v. United States, 449 U.S. 490, 506-07 (1981).

The requirements for naturalization are set forth in 8 U.S.C. § 1427:

No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

Saleh meets all of the requirements for naturalization. Saleh has been lawfully admitted for permanent residence for the past 18 years. See Alien Registration Card. Saleh has been physically present in the United States for the requisite period of time. See N-400 Application for Naturalization, at 4.

USCIS has denied Saleh's application, finding that he lacks good moral character based on 8 U.S.C. § 1427(a)(3) and 8 C.F.R. § 316.10(b)(3)(iii).[1] USCIS has erred as a matter of law.

The police charged Saleh with infractions of the New York State Tax Law §§ 18140 and 18170, which relate to the sale of individual cigarettes outside of the pack

---

[1] 8 C.F.R. § 316(b)(3)(iii) provides in relevant part:

Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant: (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b) (1) or (2).

4

(known colloquially as "loosies").  However, in all instances, Saleh was convicted of disorderly conduct (New York Penal Law § 240.20).  The very language of § 240.20 indicates that disorderly conduct entails an intent to cause "public inconvenience, annoyance or alarm" by committing acts such as fighting, causing unreasonable noise, disturbing lawful assembly, obstructing vehicular traffic, and creating hazardous conditions.  On the other hand, 8 C.F.R. §§ 316.10(b)(1) and (2) list offenses such as murder, aggravated felonies, possession of controlled substances, and lying to government officials to obtain immigration benefits.  In comparison to that parade of horribles, three instances of disorderly conduct do not rise to the level of criminal activity that "adversely reflect" upon Saleh's character.  Additionally, § 240.20 is merely a violation under the N.Y. Criminal Code.  Saleh has only been convicted of three violations, which do not support the USCIS's finding that Saleh lacks good moral character.

Counsel has been unable to find any case law regarding the interplay between New York Penal Law § 240.20 and 8 C.F.R. § 316.10(b)(3)(iii).  However, other Courts have reversed USCIS's determinations involving more serious offenses.  See Ragoonanan v. USCIS, 2007 WL 4465208 at *5 (D.Minn. 2007) (granting Plaintiff's motion for summary judgment despite DWI conviction resulting in probation); also see Biba v. U.S. Dept. of Homeland Security, 2006 WL 1814318 at *1 (M.D.Fla. 2006) (granting Plaintiff's motion for summary judgment despite convictions for soliciting a prostitute and for fighting).

Contrary to the Government's contentions, Saleh has demonstrated "extenuating circumstances" regarding his arrests and violations.  During his deposition, Saleh stated

that during his January 13, 2006 arrest, sometimes he understood the English being spoken to him by the police officers but "a lot of the time I did not." Deposition of Ameen Nagi Saleh, taken on March 26, 2008 ("Depo.") at 56. During his court appearances, his interaction with the court-appointed counsel representing him was limited and at times, he did not even understand the Arabic interpreter. Depo. at 46, 62, 63, 73, and 74. As noted in his previous letter, Saleh reiterates that three instances of criminal violations of disorderly conduct do not rise to the level of criminal activity that "adversely affects" his good moral character. In addition, Saleh proffers affidavits from friends and colleagues who have attested to his good moral character.

## CONCLUSION

For the above-stated reasons, Saleh moves the Court for summary judgment and requests that the Court grant his application for naturalization.

Dated: August 27, 2008
      New York, New York

        Respectfully submitted,
        FERRO & CUCCIA

        _____/s/ Romben Aquino_____

        By:_____
        Romben Aquino
        100 Lafayette Street, Suite 201
        New York, NY 10013
        212-966-7775